UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

JAMES D. SALLAH, ESQ., not
individually, but solely in his capacity as
Court-Appointed Receiver for JCS
Enterprises Inc., d/b/a JCS Enterprises
Services Inc., T.B.T.I. Inc., My Gee Bo,
Inc., JOLA Enterprise, Inc., and PSCS
Holdings, LLC,

      **Plaintiff,**

vs.

LIGIA TANNEY, an individual,
ERICH HENLEY, an individual,
GREGORY LOWE, an individual, and
AHD INVESTMENTS, LLC, an Indiana
limited liability company,

      **Defendants.**
_____/

## COMPLAINT

Plaintiff James D. Sallah, Esq. ("Plaintiff," "Mr. Sallah," or the "Receiver"), not individually, but solely in his capacity as Court-Appointed Receiver for JCS Enterprises Inc., d/b/a JCS Enterprises Services Inc. ("JCS"), T.B.T.I. Inc. ("TBTI"), My Gee Bo, Inc. ("Gee Bo"), JOLA Enterprise Inc. ("JOLA"), and PSCS Holdings, LLC ("PSCS") (collectively, the "Receivership Entities" or the "Receivership Estate"), by and through undersigned counsel, hereby sues Ligia Tanney, an individual ("Ligia Tanney"), Erich Henley, an individual ("Henley"), Gregory Lowe, an individual ("Lowe"), and AHD Investments, LLC ("AHD") (Gregory Lowe and AHD are referred to herein as "Lowe") (collectively, "Defendants"), and alleges as follows:

## I. PARTIES AND OTHER RELEVANT PERSONS

### A. THE RECEIVER, JAMES D. SALLAH, ESQ.

1. On April 7, 2014, the United States Securities and Exchange Commission (the "SEC") commenced an action against JCS, TBTI, and two individuals, Joseph Signore ("Joseph Signore") and Paul L. Schumack, II ("Schumack") in the case styled, *Securities and Exchange Commission v. JCS Enterprises, Inc., d/b/a JCS Enterprises Services, Inc., T.B.T.I. Inc., Joseph Signore, and Paul L. Schumack, II.*, Case No. 14-CV-80468-MIDDLEBROOKS/BRANNON (S.D. Fla. Apr. 7, 2014) (the "SEC Case").

2. On April 7, 2014, the Honorable Donald M. Middlebrooks, United States District Court Judge, issued an Amended Receivership Order and appointed Mr. Sallah as Receiver over JCS and TBTI.

3. On April 14, 2014, the Court expanded the Receivership over Gee Bo. On December 12, 2014, the Court expanded the Receivership over JOLA and PSCS.

4. On December 15, 2014, the Court reappointed Mr. Sallah as Receiver for the Receivership Entities (the "Reappointment Order"). A copy of the Reappointment Order is attached hereto as **Exhibit A**.

5. In the Reappointment Order, the Court has directed the Receiver to:

> Investigate the manner in which the affairs of the Receivership Entities were conducted and institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Entities and their investors and other creditors as the Receiver deems necessary against those individuals, corporations, partnerships, associations and/or unincorporated organizations, which the Receiver may claim have wrongfully, illegally or otherwise improperly misappropriated or transferred monies or other proceeds directly or indirectly traceable from investors in the Receivership Entities, including their officers, directors, employees, affiliates, subsidiaries, or any persons acting in concert or participation with them, or against any transfers of money or other proceeds directly or indirectly traceable from investors in the

2

    Receivership Entities; provided such actions may include, but not be limited to, seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers under Florida Statute §726.101, *et seq*. or otherwise, rescission and restitution, the collection of debts, and such orders from this Court as may be necessary to enforce this Order.

6. In accordance with 28 U.S.C. §754, the Receiver filed a copy of the Complaint in the SEC Case and a copy of the Amended Receivership Order or the Reappointment Order in the United States District Courts for the Districts where each Defendant resides within ten (10) days of the issuance of the respective orders, as applicable.

7. In accordance with the Amended Receivership Order and the Reappointment Order, Mr. Sallah has brought this action, not in his individual capacity, but solely in his capacity as Court-Appointed Receiver, to recover money transferred to Defendants from the Receivership Entities in excess of Defendant's principal investment.

## B. THE RECEIVERSHIP ENTITIES

8. JCS is a Delaware corporation, incorporated in 2010, with its principal place of business in Jupiter, Florida. Joseph Signore was the Chairman and President of JCS, and Laura Signore ("Laura Signore") was Vice Chairperson and Vice President.

9. TBTI is a Florida corporation, incorporated in 2001, with its former principal place of business in Coconut Creek, Florida. Schumack was Vice President of TBTI, and Christine Schumack ("Christine Schumack") was its President.

10. Gee Bo is a Florida corporation, incorporated in 2013, with its former principal place of business in Jupiter, Florida. Defendant Joseph Signore was Gee Bo's President and Defendant Laura Signore was its Treasurer and Secretary.

11. JOLA is a Florida corporation, incorporated in 2013, with its former principal place of business in Jupiter, Florida.

12. PSCS is a limited liability company organized under the laws of the State of Florida in 2013 with its former principal place of business in Highland Beach, Florida.

C. **DEFENDANTS**

13. Upon information and belief, Defendant Ligia Tanney resides in Coconut Creek, Florida.

14. Upon information and belief, Defendant Erich Henley resides in Gilbert, South Carolina.

15. Upon information and belief, Gregory Lowe resides in Westfield, Indiana.

16. Upon information and belief, AHD is an Indiana limited liability company with its principal place of business in Westfield, Indian.  Upon information and belief, G. Lowe controls AHD and formed AHD for the purpose of receiving commissions from TBTI.

## II.   JURISDICTION AND VENUE

17. The Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 78aa, 28 U.S.C. § 754, and principles of ancillary or supplemental jurisdiction under 28 U.S.C. § 1367.  This Complaint is brought to accomplish the objectives of the Receivership Order, and thus this matter is ancillary to the Court's exclusive jurisdiction over the Receivership Estate.

18. The Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. §§ 754 and 1692.

19. Venue in this District and Division is proper under 28 U.S.C. § 754 as this action is related to the SEC Case pending in this District, and the Receiver was appointed in this District.

## III. FACTS RELEVANT TO THE RECEIVER'S CLAIMS

### A. THE JCS-TBTI PONZI SCHEME

20. JCS manufactured and marketed virtual concierge machines ("VCMs"), which are free-standing or wall-mounted, ATM-like machines that were promised to be placed at various locations to enable businesses to advertise their products and services via touch screen and printable tickets or coupons which were dispensed from the VCMs.

21. In 2011, JCS and TBTI entered into an agreement whereby TBTI would be the sales agent for JCS and its Virtual Concierge program.

22. From at least as early as 2011 through April 7, 2014, Joseph Signore operated JCS.

23. From at least as early as 2011 through April 7, 2014, Schumack operated TBTI.

24. Joseph Signore and Schumack offered and sold investments in JCS's VCMs, which would purportedly pay income to investors from advertising revenues generated by the VCMs.

25. JCS and TBTI, combined, raised approximately $80.8 million from nearly 1,800 investors by selling contracts for more than 22,500 VCMs.

26. These sales to investors were documented through contracts with JCS and TBTI, and those contracts represented that advertising revenue would provide investors with a return of $300 per month for thirty-six (36) to forty-eight (48) months, or a return of at least $10,800 over a 36 month period.

27. However, advertising revenues were insufficient to pay the promised returns to investors.

28. During the relevant time period from 2011 through April 7, 2014, JCS and TBTI, combined, earned a total of approximately $21,000 in advertising revenue from these machines.

29. To put things into perspective, the advertising revenue actually generated by VCMs would not even have supported the obligations for **two** (2) VCMs that were sold under the shorter, 36-month contracts, let alone more than 22,000 VCMs. Moreover, based on a conservative calculation assuming that the payment stream would be limited to 36 months, JCS and TBTI would have been obligated to pay more than $243.4 million to investors during the duration of these investment contracts, or $6.75 million per month.

30. Besides approximately $21,000 in advertising revenue, JCS and TBTI generated no other meaningful source of revenue or cash inflows from which to pay investors.

31. In order to maintain the fiction that the investment was valid and make these payments to investors, Joseph Signore and Paul Schumack caused JCS and TBTI, respectively, to use new investor funds to make so-called "returns" to earlier investors in the total amount of $49.7 million.

32. While Joseph Signore operated JCS and Paul Schumack operated TBTI, they caused JCS and TBTI to transfer monies: (a) as returns and/or redemptions to earlier investors; (2) for commissions paid to agents who perpetuated their scheme; and (3) for their own use, including diverting funds to themselves or other companies they controlled.

33. These transfers were made almost exclusively from: (1) principal money from new investors; (2) existing investors' principal investment money; and/or (3) additional principal investment money from existing investors.

34. All transfers that Joseph Signore wrongfully caused JCS to make as returns and/or redemptions to investors and as commissions paid to agents were diverted and misappropriated by Joseph Signore in furtherance of his scheme.

35. All transfers that Paul Schumack wrongfully cause TBTI to make as returns and/or redemptions to investors and as commissions paid to agents were diverted and misappropriated by Paul Schumack in furtherance of his scheme.

36. As a result, Joseph Signore operated JCS as a Ponzi scheme.

37. As a result, Paul Schumack operated TBTI as a Ponzi scheme.

38. Indeed, regarding this Ponzi scheme, on December 7, 2015, a jury sitting in the United States District Court for the Southern District of Florida found Joseph Signore and Paul Schumack guilty of multiple crimes, including conspiracy to commit wire or mail fraud; mail fraud; wire fraud; conspiracy to commit money laundering; promotional money laundering; concealment money laundering; and transactional money laundering. *See United States of America v. Joseph Signore, Paul Lewis Schumack II, and Laura Grande-Signore*, Jury Verdicts (DE 677, 678), Case No. 9:14-cr-80081-HURLEY (S.D. Fla. Dec. 7, 2015).

**B. SCHUMACK CAUSED TBTI TO TRANSFER FUNDS FRAUDULENTLY TO DEFENDANTS**

39. Defendants invested in VCM contracts in the amounts indicated in the table, below, net of any chargebacks they may have received.

40. Schumack caused TBTI to transfer purported income and/or purported return of principal payments ("Income Payments") to Defendants in the amounts indicated in the table, below:

| Exhibit | Defendant | Net Amount Invested | Income Payments |
|---|---|---|---|
| B | Ligia Tanney | $27,000.00 | $ 90,900.00 |
| C | Erich Henley | 153,000.00 | 184,000.00 |
| D | Gregory Lowe and AHD | 155,400.00 | 237,500.00 |

These transfers are itemized in **Exhibits B**, **C** and **D**, which detail the date and amount of each such transfer from and to each, respective Defendant.  Exhibit B reflects transfers between the Receivership Entities and Ligia Tanney for investments in VCM contracts.  Exhibit C reflects transfers between the Receivership Entities and Henley for investments in VCM contracts.  Exhibit D reflects transfers between the Receivership Entities and Lowe.

41.     Paul Schumack caused TBTI to make these Income Payments with actual intent to hinder, delay, or defraud TBTI.

42.     TBTI did not receive a reasonably equivalent value in exchange for any Income Payments that were made to Defendants in excess of the amounts they may have invested ("Excess Income Payments").

43.     At the time of these transfers, Paul Schumack was engaged, or was about to engage, in a business or a transaction for which his remaining assets were unreasonably small in relation to the business or transaction.

44.     At the time of these transfers, Paul Schumack intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

45.     TBTI was harmed by this unauthorized course of conduct, which was effectuated by Paul Schumack, individually, or through his control of TBTI.

46.     This conduct dissipated TBTI's assets.

8

47. Accordingly, Paul Schumack is a debtor under Fla. Stat. §726.102(6), and the Receiver, on behalf of the Receivership Entities, is a creditor of Paul Schumack.

### C. DEFENDANTS HENLEY AND LOWE RECEIVED COMMISSION PAYMENTS TO SELL PURPORTED INVESTMENTS IN THE JCS-TBTI PONZI SCHEME

48. Defendants Henley and Lowe entered into an agreement with TBTI whereby Defendants Henley and Lowe would solicit investors to invest in VCMs in exchange for the payment of commissions to them.

49. Based on the records reviewed by the Receiver as of the filing of this Complaint, Schumack caused TBTI to pay commissions (the "Commission Payments") to Henley and Lowe on the dates and in the amounts provided, respectively, in **Exhibits E** and **F**.

50. Schumack caused TBTI to make the Commission Payments to the Commission Henley and Lowe with actual intent to hinder, delay, or defraud TBTI.

51. TBTI did not receive a reasonably equivalent value in exchange for the Commission Payments made to Henley and Lowe, respectively.

52. At the time of these transfers, Paul Schumack was engaged, or was about to engage, in a business or a transaction for which his remaining assets were unreasonably small in relation to the business or transaction.

53. At the time of these transfers, Paul Schumack intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

54. TBTI was harmed by this unauthorized course of conduct, which was effectuated by Paul Schumack, individually, or through his control of TBTI.

55. This conduct dissipated TBTI's assets.

56. Accordingly, Paul Schumack is a debtor under Fla. Stat. §726.102(6), and the Receiver, on behalf of the Receivership Entities, is a creditor of Paul Schumack for the recovery of the Commission Payments he made to Henley and Lowe.

### D. DEFENDANTS' RETENTION OF THE BENEFITS CONFERRED BY THE RECEIVERSHIP ESTATE

57. TBTI conferred benefits on Defendants, respectively, including the transfer to Defendants of funds in excess of the amounts they respectively contributed to TBTI, respectively, as reflected in Exhibits B to F.

58. Defendants accepted these benefits willfully and voluntarily.

59. Defendants continue to retain the benefits conferred on them by TBTI, as applicable.

60. To allow the Defendants to retain these funds would be inequitable and unjust, including to investors in the Receivership Entities.

### CONDITIONS PRECEDENT

61. All conditions precedent for asserting the claims herein have been satisfied, executed or waived.

### COUNT I
### SECTION 726.105(1)(a), FLA. STAT.:
### UNIFORM FRAUDULENT TRANSFER ACT
### (AGAINST EACH DEFENDANT FOR INCOME PAYMENTS)

62. The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 62.

63. This claim is asserted in the alternative to Counts II, III, and VII.

64. Paul Schumack, a debtor, caused TBTI to transfer Income Payments to Defendants Ligia Tanney, Henley, and Lowe, directly or indirectly, with actual intent to hinder, delay or defraud the Receiver, a creditor.

65. The Receiver is entitled to avoid the fraudulent transfers of the Income Payments from TBTI to Defendants Ligia Tanney, Henley, and Lowe, as set forth in Exhibits B to D, pursuant to Section 726.105(1)(a), FLA. STAT.

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Ligia Tanney, Henley, and Lowe for the Income Payments, as set forth in Exhibits B to D, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

## COUNT II
### SECTION 726.105(1)(b), FLA. STAT.:
### UNIFORM FRAUDULENT TRANSFER ACT
### (AGAINST EACH DEFENDANT FOR EXCESS INCOME PAYMENTS)

66. The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 62.

67. This claim is asserted in the alternative to Counts I, III, and VII.

68. TBTI did not receive a reasonably equivalent value in exchange for the transfer of the Excess Income Payments made to Defendants Ligia Tanney, Henley, and Lowe.

69. When these transfers were made, Paul Schumack was engaged in a business or transaction for which the remaining assets were unreasonably small in relation to the business or transaction.

70. When these transfers were made, Paul Schumack intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as the debt became due.

71.     The Receiver is entitled to avoid the transfers of Excess Income Payments made from TBTI to Defendants Ligia Tanney, Henley, and Lowe, as set forth in Exhibits B to D, pursuant to Section 726.105(1)(b), FLA. STAT.

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Ligia Tanney, Henley, and Lowe, respectively, avoiding all transfers of Excess Income Payments, as set forth in Exhibits B to D, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

## COUNT III
### SECTION 726.106(1), FLA. STAT.:
### UNIFORM FRAUDULENT TRANSFER ACT
### (AGAINST EACH DEFENDANT FOR EXCESS INCOME PAYMENTS)

72.     The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 62.

73.     This claim is asserted in the alternative to Counts I, II, and VII.

74.     TBTI's claim arose before Paul Schumack caused TBTI to transfer the Excess Income Payments to Defendants Ligia Tanney, Henley, and Lowe, respectively.

75.     TBTI did not receive a reasonably equivalent value in exchange for the transfer of the Excess Income Payments made to Defendants Ligia Tanney, Henley, and Lowe, respectively.

76.     Paul Schumack was insolvent at the time of the transfers or became insolvent as a result of the transfers.

77.     The Receiver is entitled to void these transfers of Excess Income Payments from TBTI to Defendants Ligia Tanney, Henley, and Lowe, respectively, as set forth in Exhibits B to D, pursuant to Section 726.106(1) FLA. STAT.

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Ligia Tanney, Henley, and Lowe, respectively, avoiding all transfers of the Excess Income Payments

from TBTI to Defendants Ligia Tanney, Henley, and Lowe, respectively, as set forth in Exhibits B to D, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

## COUNT IV
### SECTION 726.105(1)(a), FLA. STAT.:
### UNIFORM FRAUDULENT TRANSFER ACT
### (AGAINST HENLEY AND LOWE FOR THE AVOIDANCE OF COMMISSION PAYMENTS)

78. The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 62.

79. This claim is asserted in the alternative to Counts V, VI, and VII.

80. Paul Schumack, a debtor, caused TBTI to transfer Commission Payments to Henley and Lowe, as set forth in Exhibits E and F, respectively, directly or indirectly, with actual intent to hinder, delay or defraud the Receiver, a creditor.

81. The Receiver is entitled to avoid the Commission Payments made to the Commission Defendants pursuant to Section 726.105(1)(a), FLA. STAT.

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Henley and Lowe avoiding all Commission Payments from TBTI to them, respectively, directly or indirectly, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

## COUNT V
### SECTION 726.105(1)(b), FLA. STAT.:
### UNIFORM FRAUDULENT TRANSFER ACT
### (AGAINST HENLEY AND LOWE FOR THE AVOIDANCE OF COMMISSION PAYMENTS)

82. The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 62.

83. This claim is asserted in the alternative to Counts IV, VI, and VII.

84. TBTI did not receive a reasonably equivalent value in exchange for the transfer of Commission Payments that Paul Schumack caused TBTI to make, directly or indirectly, to Henley and Lowe, as set forth in Exhibits E and F, respectively.

85. When these transfers were made to Henley and Lowe, Paul Schumack was engaged in a business or transaction for which the remaining assets were unreasonably small in relation to the business or transaction.

86. When these transfers were made, Paul Schumack intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as the debt became due.

87. Pursuant to FLA. STAT. §726.105(1)(b), the Receiver is entitled to avoid the Commission Payments made to Henley and Lowe.

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Henley and Lowe avoiding all Commission Payments from TBTI to them, respectively, directly or indirectly, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

## COUNT VI
### SECTION 726.106(1), FLA. STAT.:
### UNIFORM FRAUDULENT TRANSFER ACT
### (AGAINST HENLEY AND LOWE FOR THE AVOIDANCE OF COMMISSION PAYMENTS)

88. The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 62.

89. This claim is asserted in the alternative to Counts IV, V, and VII.

90. Paul Schumack caused TBTI to transfer Commission Payments to Henley and Lowe, respectively, directly or indirectly, as set forth in Exhibits E and F.

91. TBTI's claim against Paul Schumack arose before Paul Schumack caused TBTI to transfer any of the Commission Payments to Henley and Lowe, respectively.

92. TBTI did not receive a reasonably equivalent value in exchange for the transfer of Commission Payments to Henley and Lowe, respectively.

93. Paul Schumack was insolvent at the time of the transfers or became insolvent as a result of the transfers.

94. The Receiver is entitled to avoid the transfers of Commission Payments from TBTI to Defendants Henley and Lowe pursuant to FLA. STAT. §726.106(1).

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Henley and Lowe avoiding all Commission Payments from TBTI to Defendants Henley and Lowe, respectively, directly or indirectly, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

## COUNT VII
### UNJUST ENRICHMENT
### (AGAINST EACH DEFENDANT)

95. The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 39 and 58 through 63.

96. This unjust enrichment claim is asserted in the alternative to Counts I through VI in the event the remaining claims pleaded provide an inadequate remedy at law.

97. Defendants Ligia Tanney, Henley, and Lowe, respectively, received benefits from TBTI.

98. Defendants Ligia Tanney, Heley, and Lowe, respectively, knowingly and voluntarily accepted and retained these benefits.

99. The circumstances alleged in this compliant render the retention of those respective benefits by Defendants Ligia Tanney, Henley, and Lowe inequitable and unjust, including to the investors of TBTI and the Receivership as a whole, so Defendants Ligia Tanney, Henley, and Lowe must pay the Receiver, acting on behalf of TBTI, the value of the benefits respectively received.

100. Defendants Ligia Tanney, Henley, and Lowe, respectively, have been unjustly enriched at the expense of TBTI (and, ultimately, its investors) in the amount of the transfers to Defendants Ligia Tanney, Henley, and Lowe in excess of their respective, principal investments, and TBTI, through the Receiver, is entitled to judgment in that amount.

101. The Receiver, on behalf of TBTI, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Ligia Tanney, Henley, and Lowe for the value of the benefits conferred on them, respectively, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**SALLAH ASTARITA & COX, LLC**
*Counsel for James D. Sallah, Esq., not individually, but solely in his capacity as Receiver*
One Boca Place
2255 Glades Road, Ste. 300E
Boca Raton, FL 33431
Tel.: (561) 989-9080
Fax: (561) 989-9020

/s/Joshua A. Katz, Esq.
**Joshua A. Katz, Esq.**
Fla. Bar No. 0848301
Email: jak@sallahlaw.com
**Jeffrey L. Cox, Esq.**
Fla. Bar No. 0173479
Email: jlc@sallahlaw.com